AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A Samsung phone with a black case, sealed in a clear plastic bag labeled Farmington Police Department case # 2022-18239

)
)
)   Case No.  22-MR-639
)
)
)

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of ____New Mexico____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute and distribution of controlled substances |
| 21 U.S.C. § 846 | Attempt and conspiracy |
| 18 U.S.C. § 924(c) | Using and carrying a firearm during and in relation to a Drug Trafficking Crime / Possessing a firearm in furtherance of such crime |

The application is based on these facts:

See attached affidavit, submitted by FBI TFO Wacey Cotant and approved by AUSA David Hirsch.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Wacey Cotant, FBI Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephonically sworn and electronically signed__ *(specify reliable electronic means)*.

*Judge's signature*

Date: 04/21/2022

City and state: Albuquerque, New Mexico

Steven C. Yarbrough, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Wacey Cotant, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer ("TFO") for the Federal Bureau of Investigation ("FBI"), and have been since December 2021. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

3. I have been a certified and commissioned peace officer with the San Juan County Sheriff's Office since December 2017. I have received extensive training in the investigation of narcotics violations and have participated in numerous investigations of narcotics violations as well as the execution of narcotics-related search warrants and arrest warrants. As a result of my training and experience, I have become familiar with the methods and means by which narcotics traffickers import, store, process and distribute their controlled substances.

4. I am currently assigned to the Region II Narcotics Task Force ("RII"), a multi-agency, multi-jurisdiction task force that works to investigate, apprehend and prosecute violators of the New Mexico Controlled Substances Act and related offenses.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

6. The property to be searched consists of four cellular telephones, as described in Attachments A and B (hereafter referred to as the "Devices") and is identified as follows:

   a. A Samsung phone with a black case, sealed in a clear plastic bag labeled Farmington Police Department case # 2022-18239;

   b. A black and silver ANS "flip" phone, sealed in a clear plastic bag labeled Farmington Police Department case # 2022-18239.

   c. A black iPhone, sealed in a clear plastic bag labeled Farmington Police Department case # 2022-18239;

   d. A black Motorola phone, sealed in a clear plastic bag labeled Farmington Police Department case # 2022-18239.

   e. The Devices are currently located in evidence at the Farmington Police Department at 900 Municipal Drive, Farmington, NM 87401.

7. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**DRUG TRAFFICKING AND CELLULAR DEVICES**

8. Based upon my training and experience, and on my consultation with other law enforcement officers experienced in investigations regarding conspiracy to manufacture, distribute and possess with intent to distribute controlled substances, I have learned the following:

   a. Those who possess illegal drugs for distribution often use electronic devices such as wireless or cellular telephones and smartphones. Such electronic devices are often

used to communicate with coconspirators and customers through the telephone's standard capabilities to call and text, as well as through smartphone applications ("apps") such as WhatsApp, Snapchat, Pinger, Marco Polo and Facebook, which allow users to send and receive digital communications in various forms such as voice calls, text messages, image and video sharing, and live video conversations. Records of these communications, text messages, and contact lists are frequently retained and stored on those electronic devices and within those apps. Based upon my training, experience, and knowledge of this investigation, I believe that such evidence and information is likely to be found in the Device.

        b.      Individuals involved in the illegal trafficking of controlled substances often maintain documents, records, and other evidence of their transactions in a manner similar to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records are often maintained for long periods of time, even years, to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers and co-conspirators. These records may be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay/owe sheets, IOUs, miscellaneous notes, money orders, customer lists and telephone address books. These records can reflect names, addresses and/or telephone numbers of associates and co-conspirators, the sale and purchase of controlled substances including precursors, customer lists and amounts of money owed to the trafficker by customers and by the trafficker to his/her suppliers. All such records can also be produced and/or stored on cellular telephones and evidence of these transactions is often contained within cellular phones.

   c. Drug dealers often travel domestically and internationally to facilitate their trafficking. Evidence of foreign and domestic travel by persons engaged in illegal drug trafficking includes travel itineraries, airline tickets, hotel and gas receipts, and passports and visas and their contents. Many of these items are accessible via the internet and can be downloaded and saved on the computer or other media such as cellular phones.

   d. Drug trafficking is a crime that necessarily involves at least two people – a buyer and a seller. Prior to engaging in the drug transaction, the buyer and seller must communicate and discuss the type of drug to be sold, the quantity, the price, and the location where the sale will take place. I know that drug dealers and their customers make use of cellular phones and smartphones to conduct these necessary communications.

   e. Information stored in electronic form on cellular telephones can provide evidence of drug trafficking and the identity of associates. For example, numbers stored on cellular telephones (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the drug dealer is calling, and thus the identity of associates.

   f. Drug dealers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their property, drug trafficking records, records of financial transactions involving drug trafficking proceeds, their drugs, and firearms. They usually take these photographs and/or videos with their cellular phones and store them in those cellular phones.

   g. I know that those engaged in drug trafficking have access to, and utilize, numerous cellular telephones, often at the same time in an effort to avoid law enforcement monitoring.

h.      Electronic information can remain on computer storage media, such as within cellular phones, for an indefinite period of time. I am aware that even when a user attempts to delete records from computer storage media, the records may still exist and be recovered through computer forensic techniques.

## PROBABLE CAUSE

9.      The Region II Narcotics Task Force is conducting an investigation of Teyo Quezada ("Quezada") and others regarding possible violations of 21 U.S.C. §§ 841 and 846, as well as 18 U.S.C. § 924(c).

10.     On April 6, 2022, Region II officers executed a state search warrant for Teyo Quezada's residence, where he lived with his girlfriend, Arrica Yarborough ("Yarborough"). The residence is located at 517 Shirley Street in Bloomfield, New Mexico, within San Juan County and the District of New Mexico. Prior to April 6, 2022, Officers confirmed that Quezada resided at 517 Shirley Street through hours of surveillance.

11.     After arriving at the residence, officers quickly took Quezada and Yarborough into custody on separate, unrelated active warrants. They secured the residence, its curtilage, and the vehicles located in the driveway.

12.     Officers used a certified police service dog to conduct a free air scent of the vehicles. The dog alerted to the odor of narcotics on three vehicles in the driveway, leading to the following seizures:

| Vehicle | License Plate | Seizures |
| --- | --- | --- |
| Black Audi A4 | Colorado BCQD05 | Drug paraphernalia; one partially burnt fentanyl pill |

| Gold Cadillac SUV[1] | Colorado CGCL62 | A Samsung phone with a black case (see ¶ 6(a)); a black and silver ANS "flip" phone (see ¶ 6(b)); 9.3 grams of suspected methamphetamine; and drug paraphernalia |
| --- | --- | --- |
| Gold Honda Accord | Colorado CGCL62 | No evidence of value. |

13. Officers then executed the search warrant on the residence. They found two other phones, as well as a large variety of drugs and firearms, in various locations.

14. Within a large black safe near the laundry room, officers located:

    a. 4,150 grams (gross weight) of suspected methamphetamine, which field tested positive for methamphetamine. This amount is consistent with distribution rather than personal use;

    b. 855 grams (gross weight) of blue pills, suspected to contain fentanyl;

    c. A black Taurus G2C semiautomatic pistol (Serial Number TLY17639), chambered in 9mm and loaded with rounds inside a drum magazine;

    d. A black Glock semiautomatic pistol (Serial Number RMS639), chambered in .45 auto and loaded with a round in the chamber; and

    e. A pink camouflage Ruger semiautomatic handgun (Serial Number 380245024), chambered in .380 auto, with a loaded magazine.

15. Within a small sentry safe near the laundry room, officers located:

    a. A black Taurus Ultralight revolver (Serial Number LY30664), chambered in .38 special and loaded with five rounds of ammunition. Officers ran the serial number

---

[1] Officers repeatedly observed Quezada driving this vehicle. They obtained the VIN number and ran it through local databases, which revealed that it is registered to Quezada. The license plate displayed the vehicle returned as stolen based on Colorado records.

for this firearm through NCIC, which indicated that the firearm was reported stolen in Colorado;

    b.    a black and tan Kimber Micro 9 semiautomatic pistol (Serial Number PB0050883), chambered in 9mm and unloaded;

    c.    22.4 grams (gross weight) of black tar heroin. This substance field tested positive for heroin;

    d.    15 grams (gross weight) of suspected fentanyl pills;

    e.    13 orange pills, suspected to contain fentanyl; and

    f.    $18,931.00 in U.S. currency.

16.    Within and on the living room table, officers located:

    a.    **A black iPhone (see ¶ 6(c))**, which was located near Quezada's driver's license;

    b.    An unloaded silver Robinhood .22 caliber revolver, which appeared to be a functioning firearm. Officers could not locate any serial number on this revolver;

    c.    5.2 grams (gross weight) of suspected methamphetamine, which field tested positive for methamphetamine;

    d.    4.5 grams (gross weight) of suspected psilocybin mushrooms;

    e.    1.2 grams (TGW) of suspected black tar heroin; and

    f.    a working digital scale.

17.    In the master bedroom and bathroom, officers located:

    a.    64.9 grams (gross weight) of suspected methamphetamine, which field tested positive for methamphetamine; and

      b.     A black and silver Kimber .45 semiautomatic handgun (Serial Number K747283), loaded with one round in the chamber.

18.    Within a black duffel bag in the living room, officers located **a black Motorola phone (see ¶ 6(d))**.[2]

19.    Throughout the residence, officers found a total of approximately 2,019 rounds of ammunition. This amount includes the ammunition mentioned above.

20.    On April 12, 2022, the Court issued an arrest warrant for Quezada.

21.    On April 18, 2022, the Court found probable cause after a contested preliminary hearing.

22.    Based on the events described above, there is probable cause to believe that the Devices will contain evidence of Teyo Quezada's drug trafficking activities and related firearms offenses, specifically violations of 21 U.S.C. §§ 841 and 846, as well as 18 U.S.C. § 924(c).

23.    The Devices are currently in the lawful possession of the Farmington Police Department. The Devices came into the Farmington Police Department's possession during the execution of a search warrant on April 6, 2022.

24.    The Devices are currently in storage at the Farmington Police Department, 900 Municipal Dr. Farmington, NM 87401. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the Farmington Police Department.

---

[2] This duffel bag was located near an area of the couch where Quezada later informed officers they would find his illegal narcotics. It also contained an assortment of male clothing in sizes consistent with Quezada's stature.

## TECHNICAL TERMS

25. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for

viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

26.  Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs.[3] In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

---

[3] Although some of the Devices are relatively simple "flip" phones, in my training and experience these devices often have similar capabilities to smartphones.

11

28.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

30. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachments A to seek the items described in Attachment B.

32. The affidavit has been reviewed by AUSA David Hirsch.

Respectfully submitted,

_____
Wacey Cotant
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn telephonically and signed electronically on  April 21, 2022

_____
Steven C. Yarbrough
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a Samsung phone with a black case, sealed in a clear plastic bag labeled Farmington Police Department case # 2022-18239. The Device is currently located in evidence at the Farmington Police Department at 900 Municipal Drive, Farmington, NM 87401.

This warrant authorizes the forensic examination of this device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records and information on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846, as well as 18 U.S.C. § 924(c), including:

   a. data and information identifying co-conspirators, customers, and suppliers;

   b. communications between co-conspirators, customers, and suppliers;

   c. data and information regarding the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. data and information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. photographs and/or videos;

   f. financial records or other information regarding the expenditure or disposition of proceeds from the distribution of controlled substances including all bank records, checks, credit card bills, account information, and other financial records; and

   g. records of travel.

2. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.